UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBERT SILCOX,<br><br>        Plaintiff,<br><br>    v.<br><br>AN/PF ACQUISITIONS CORP., d/b/a AUTONATION FORD BELLEVUE, a Delaware Corporation,<br><br>        Defendant. | CASE NO. C17-1131 RSM<br><br>ORDER DENYING DEFENDANT'S MOTION FOR PROTECTIVE ORDER AND TO QUASH PLAINTIFF'S SUBPOENA TO FORD MOTOR COMPANY, INC. |

## I.    INTRODUCTION

This matter comes before the Court on Defendant's Motion for Protective Order and to Quash Plaintiff's Subpoena to Ford Motor Company, Inc. (Dkt. #17). For the reasons stated herein, Defendant's motion is denied.

## II.    BACKGROUND

Defendant, a car dealership, is affiliated with and receives several corporate services, including human resources support, from AutoNation, Inc. ("AutoNation"). Dkt. #17 at 2. Defendant is an authorized Ford Motor Company, Inc. ("Ford") dealership and Defendant's Service Department performs maintenance and repairs under Ford factory warranties. *Id.* Plaintiff was the manager of Defendant's Service Department until he was terminated on June 10, 2015. *Id.* at 3.

ORDER – 1

In March 2015, Plaintiff was injured at work and needed to take medical leave protected under federal and Washington law. Dkt. #22 at ¶¶ 5, 6. Plaintiff was immediately terminated upon returning to work from protected leave and after notifying Defendant that he would need a reasonable accommodation to use assistant devices. *Id.* at ¶¶ 7, 8. Plaintiff alleges that the termination was on account of his age, his use of protected leave, and because he suffered from a disability. Dkt. #5 at ¶¶ 23–41.

Conversely, Defendant alleges that while Plaintiff was on leave, a Ford audit of Defendant's Service Department wrapped up and Ford "concluded that [the] Service Department had submitted a false claim for warranty work that was not actually performed." Dkt. #17 at 2–3. Resultantly, Ford charged Defendant $24,859.72 and advised Defendant that Ford viewed false claim submissions as "a serious violation of [the] Sales and Service Agreement(s)" between Defendant and Ford. *Id.* at 3; Dkt. #18-1. Defendant argues that Plaintiff was terminated because of the poor audit result and because Defendant needed to protect its relationship with Ford by demonstrating "prompt action" to correct the issue, as requested by Ford. Dkt. #17 at 3; Dkt. #18-1.

Subsequent to Plaintiff's termination, a fire occurred at Defendant's dealership and destroyed all Defendant's records. Dkt. #17 at 4. In the course of this lawsuit, Defendant obtained at least some documents from Ford related to the audit of Defendant's Service Department and provided them to Plaintiff. *Id.* However, Plaintiff believes that records of Ford's audit of Defendant and other Ford authorized dealerships receiving corporate services from AutoNation are necessary to its case. Dkt. #20 at 8–9. Plaintiff intends to serve Ford with a subpoena for "[a]ll warranty audit reports in [Ford's] possession or control for warranty audits that have been conducted between years 2013–2016 at the 36 AutoNation Ford dealerships, and

ORDER – 2

any correspondence regarding discipline or other remedial actions necessitated by any such audit." Dkt. #18-7 at 3. Defendant seeks to quash any such subpoena and seeks a protective order. Dkt. #17.

### III. DISCUSSION[1]

**A. Motion to Quash**[2]

Attorneys serving subpoenas are required to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). A subpoena that subjects a person to undue burden should be quashed or modified. Fed. R. Civ. P. 45(d)(3).

Here, Defendant seeks to quash a subpoena that Plaintiff intends to serve on Ford. A motion to quash a subpoena which has not yet been issued or served is likely not to be ripe. Fed. R. Civ. P. 45(d)(3)(B) (noting circumstances in which a court may quash or modify subpoenas "[t]o protect a person *subject to or affected by* a subpoena"). More importantly, Defendant seeks to quash a subpoena intended to be served on a third party.

Within the Ninth Circuit there remains doubt as to whether a party has standing to quash a subpoena to a third party on any basis. *See In re Rhodes Cos., LLC*, 475 B.R. 733, 738–40 (D. Nev. 2012) (noting that the "'legitimate interest' rule [of standing] applies to criminal

---

[1] As an initial matter, the Court notes that both Defendant and Plaintiff fail to fully acknowledge recent changes to the relevant federal rules and both cite to or quote outdated versions of the federal rules. *See, e.g.*, Dkt. #17 at 1 (Rule 45(c)(3)); Dkt. #20 at 7 (Rule 26(b)); Dkt. #23 at 1 (Rule 26(b)(2)).

[2] Defendant argues that Plaintiff's response to its motion was untimely. Dkt. #23 at 2 n.1. However, as noted below, Defendant's motion is more properly considered a motion for a protective order. Plaintiff's response was timely with regard to a motion for a protective order. LCR 7(d)(2). In addition, Defendant does not demonstrate prejudice or seek to strike the response. The Court has therefore considered Plaintiff's response.

ORDER – 3

subpoenas," that the Ninth Circuit has not applied the "personal right or privilege" standing rule, and concluding that only the person subject to the subpoena may bring a motion to quash under current Rule 45(d)(3)(A)). Other courts recognize a party's right to seek to quash a subpoena served on a non-party at least on the basis of privilege. *See, e.g.*, *Cal. Sportfishing Prot. Alliance v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 643 (E.D. Cal. 2014) (noting that the general rule is that the party has standing only to protect its own privilege and that the Ninth Circuit has not addressed the question). Finally, some courts recognize standing to quash a subpoena issued to a third party where the party has a "personal right or privilege with regard to the documents sought." *See, e.g.*, *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 973–74 (C.D. Cal. 2010) (quoting 9A Charles Wright & Arthur Miller, Federal Practice & Procedure, § 2459 (3d ed. 2008)).

Under any of these various tests, Defendant does not have standing to quash the proposed subpoena. Defendant has not alleged a privilege with regard to the documents. Defendant also does not have a personal right or privilege with regard to the documents sought. Rather, the documents belong to Ford and relate to AutoNation Ford dealerships other than Defendant.

Defendant therefore asserts that the subpoena will "impermissibly intrude[] upon the positive working relationship between [Defendant] and Ford." Dkt. #17 at 8. Common sense dictates that responding to the proposed subpoena will burden Ford to some extent and that Ford may attribute that burden to its relationship with Defendant. However, Defendant has already "burdened" Ford by obtaining documents for this lawsuit. Dkt. #17 at 4.

More importantly, there is no indication as to the extent of the burden. Ford is not before the Court and the record does not clearly establish the full extent of the burden on Ford. Further, Defendant cannot rely on the burden to Ford. *Wells Fargo and Co. v. ABD Ins.*, No. C12-03856-

ORDER – 4

PJH (DMR), 2012 WL 6115612 at *2 (N.D. Cal. Dec. 10, 2012) (noting that "[a] party's objection that a subpoena to a non-party seeks irrelevant information or would impose an undue burden are not grounds on which a party has standing to move to quash a subpoena when the non-party has not objected") (citations omitted). Defendant has not discussed the burden with Ford and does not know what the burden may be. Dkt. #20 at 5. Without knowing the extent of the burden, Defendant is merely speculating that the burden will drive Ford to question its continued relationship with Defendant. No matter the test, Defendant does not have standing to quash the proposed subpoena and the motion to quash is therefore denied.

**B. Protective Order**

In contrast to a motion to quash, a party clearly has standing to seek a protective order to limit discovery from a third party. *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005). Third-party subpoenas issued pursuant to Rule 45 are still subject to the limitations of Rule 26. *See Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007); *In Re Subpoena of DJO, LLC*, 295 F.R.D. 494, 497 (S.D. Cal. 2014). Rule 26(b)(1) provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). After the 2015 amendments to Rule 26, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26, Advis. Comm. Notes for 2015 Amends.

ORDER – 5

Even where evidence is relevant and proportional, the Court may limit discovery where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Further, for good cause, the Court may limit discovery by "issu[ing] an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "The party seeking a protective order has the burden to demonstrate good cause, and must make 'a particular and specific demonstration of fact as distinguished from stereotypical and conclusory statements' supporting the need for a protective order." *Auto-Owners Ins. Co.*, 231 F.R.D. at 429–30 (quoting *U.S. v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)); *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004) (requiring demonstration of harm or prejudice that will result from discovery).

Here, Defendant seeks a "protective order prohibiting Plaintiff from subpoenaing records relating to non-parties, i.e., non-[Defendant] dealerships affiliated with AutoNation." Dkt. #17 at 1. While the record is not clear as to the scope of the dispute, there appear to be two classes of documents at issue: (1) those related to Ford's audit of Defendant and (2) those related to possible Ford audits of other AutoNation Ford dealerships.

*1. Documents Related to Defendant's Audit*

As noted, the record is not clear as to whether these documents are in dispute. Defendant has moved to entirely quash the proposed subpoena to Ford, yet only seeks a "protective order prohibiting Plaintiff from subpoenaing records relating to non-parties, i.e., non-[Defendant] dealerships affiliated with AutoNation." Dkt. #17 at 1. Defendant also asserts that it requested "any and all documents in [Ford's] possession relating to the 2015 warranty audit" and that Defendant produced all documents received. Dkt. #17 at 4. Plaintiff, however, asserts that "[i]t

ORDER – 6

is unknown what was requested and whether the documents provided are all the relevant documents." Dkt. #20 at 6. Regardless, the Court has little issue determining that these documents are discoverable. Defendant alleges that it terminated Plaintiff on account of the Ford audit finding. Dkt. #17 at 3. Documents possessed by Ford that are related to Ford's audit of Defendant are relevant and proportional to the needs of this case. Plaintiff may obtain such documents directly from Ford and to the extent Defendant seeks a protective order preventing such a subpoena, its motion is denied.

*2. Documents Related to Other Ford Audits*

Plaintiff also seeks documents related to Ford's audit of other Ford dealerships receiving corporate services from AutoNation. The Court will first consider whether the discovery is relevant and proportional to the needs of the case and then consider whether Defendant has shown good cause for the Court to limit discovery or issue a protective order.

Plaintiff advances two arguments as to why these documents are relevant. First, Plaintiff argues that the documents are relevant because they may show that other Ford dealerships receiving human resources services from AutoNation had similar audit results and treated their service department managers disparately. Dkt. #20 at 7–8. But Defendant successfully shows that: (1) Defendant's General Manager ("GM") was the sole decision maker and (2) to the extent the GM received human resource services from AutoNation, the support was from an individual who was not simultaneously advising the dealerships that Plaintiff now indirectly targets for discovery. Dkt. #17 at 2; Dkt. #23 at 3–4. The record does not demonstrate that the documents are relevant to show that Defendant treated Plaintiff differently than similarly situated individuals.

ORDER – 7

Second, Plaintiff argues that the documents will show that Ford's audit finding related to Defendant was either less significant than findings at other Ford AutoNation dealerships or was typical. Dkt. #20 at 8–9. Additionally, the letter sent by Ford after its audit identifies remedial measures to be taken[3] and requests that Defendant inform Ford of corrective actions taken in response to the audit. Dkt. #18-1 at 2–3 (referring to a "Warranty Audit Action Matrix" that is not before the Court). The range of warrant findings and scope of remedial measures recommended or required by Ford are arguably relevant to the significance of Defendant's audit findings. In a case where relevant evidence appears scarce, the documents are arguably relevant to show the significance of the audit finding and the extent to which it placed Defendant's relationship with Ford in peril and prompted Defendant's actions.

The Court therefore considers whether the discovery is proportional to the needs of the case. While the record has little argument on many of the factors relevant to the Courts consideration of proportionality under Rule 26(b)(1), the record does show that the issues at stake in this action are important and the amount in controversy is not trivial. The record demonstrates that Defendant has more access to Ford's records and likely has greater resources than Plaintiff. As noted, evidence in this case appears scarce and the information may aid in resolution of the matter. Discovery will likely impose some non-negligible burden upon Ford, though Ford may not have actually conducted any audits of the 36 Ford dealerships affiliated with AutoNation in the years 2013–2016. However, as noted above, Ford is not before the Court and Defendant has

---

[3] The full scope of the remedial measures is not before the Court. Additionally, the record is not clear as to whether these are measures that Ford is implementing with regard to Defendant's warranty claims or whether these are measures that Ford is mandating that Defendant implement.

ORDER – 8

not presented any evidence of the actual burden on Ford beyond reasonable speculation. On this record, the discovery appears proportional to the needs of the case.

Finally, for the reasons detailed above, the Court finds that Defendant has not carried its burden of demonstrating that the Court should limit discovery or that there is good cause to protect Defendant or Ford from actual "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The Court will not enter a protective order on this record.

### C. Attorneys' Fees and Costs

Pursuant to Rule 26(c)(3) and Rule 37(a)(5)(B) the Court "must, after giving an opportunity to be heard, require the movant . . . to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees" unless, "the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B). Though Plaintiff has not cited to relevant authority or made any substantive argument, Plaintiff has requested attorneys' fees. Dkt. #20 at 2, 11. Defendant lacked any actual knowledge of the burden that may be imposed on Ford from the proposed subpoenas. The Defendant therefore lacked sufficient justification to seek to quash or prevent discovery from Ford on the basis of the burden on Ford. Accordingly, the Court grants Plaintiff's request for attorneys' fees.

### IV. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS that:

1. Defendant's Motion for Protective Order and to Quash Plaintiff's Subpoena to Ford Motor Company, Inc. (Dkt. #17) is DENIED.

ORDER – 9

2. Plaintiff's request for attorney's fees and costs is GRANTED. No later than fourteen (14) days from the date of this Order, Plaintiff may file a Supplemental Motion for Attorney's Fees no longer than six (6) pages and supported by documentary evidence reflecting the amount of fees and costs sought. The motion shall be noted for the second Friday after it is filed. No later than the Monday before the noting date, Defendant may file a Response, no longer than six (6) pages, addressing only the reasonableness of the fees and costs requested. No Reply is permitted.

DATED this 29th day of March 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE